UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHARLES LAMIRAND and TRACY LAMIRAND,

    Plaintiffs,

v.      Case No.: 2:20-cv-138-FtM-38MRM

FAY SERVICING, LLC,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court are Defendant Fay Servicing LLC's Motion to Dismiss the Amended Complaint (Doc. 20), Plaintiffs Charles and Tracy Lamirand's response in opposition (Doc. 23), and Defendant's reply (Doc. 28). After reviewing the papers, the Court directed additional briefing on standing because of the Eleventh Circuit's recent decision in *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020). So also before the Court are the parties' supplemental briefs. (Doc. 30; Doc. 31; Doc. 35; Doc. 39; Doc. 43). For the below reasons, Plaintiffs have standing but have not stated plausible claims.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND[2]

This consumer credit case stems from a mortgage debt Plaintiffs defaulted on years ago. The default led to a foreclosure suit in state court. During those proceedings, Defendant began servicing the debt and mortgage.

Notably, this is not the parties' first debt collection case. After Defendant acquired the debt, it contacted Plaintiffs directly, and not through their lawyer. This contact allegedly violated the Fair Debt Collection Practices Act ("FDCPA") and led to the first suit: *Lamirand v. Fay Servicing, LLC*, No. 2:18-cv-333-FtM-38MRM ("*Lamirand I*"). Eventually, the state foreclosure action and *Lamirand I* resolved, and the parties signed a confidential settlement agreement. Under the settlement agreement, the parties stipulated to dismissing *Lamirand I*. And the foreclosure action ended when the state court entered a Consent Final Judgment of Mortgage Foreclosure. (Doc. 18-1).

The Consent Judgment reduced the outstanding debt to $85,790.99 plus interest[3] and let Plaintiffs stay in the home for one year with the chance to redeem the property by paying the debt before the foreclosure sale. (Doc. 18-1). Plaintiffs

---

[2] The background facts come from the Verified First Amended Complaint, the operative pleading. (Doc. 18). The Court also considers the exhibits attached to the Amended Complaint without converting the same into a motion for summary judgment. *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).

[3] The Consent Judgment also allowed the plaintiff to "recover such further costs as may be incurred by the [p]laintiff in this action, including, but not limited to, the sale fee and publication of the Notice of Sale, and any advances made by the [p]laintiff subsequent to the date of the Affidavit of Indebtedness which costs or advances are proper under the terms of the note and mortgage foreclosed herein." (Doc. 1-1 at ¶ 1).

paid no part of the Consent Judgment and filed for bankruptcy two days before the foreclosure sale—which stayed the sale.

About eight months before the foreclosure sale, however, Defendant mailed six monthly "Mortgage Statements" to Plaintiffs at their attorney's office. (Doc. 18-2). The Statements—which are the subject of this suit—said the amount to reinstate the loan was $7,000 more than the Consent Judgment. They also reflected an "Accelerated Amount Due" of over $101,000, which included attorney's fees the Consent Judgment otherwise excluded. The Statements also made the following disclaimer:

> [Defendant] is a debt collector, and information you provide to us will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay under the United States Bankruptcy Code, this is being provided for informational purposes only and does not constitute an attempt to collect a debt or impose personal liability.

(Doc. 18-3 at 3, 5, 7, 9, 11 & 13).

The Amended Complaint says nothing about Plaintiffs paying Defendant money after receiving the allegedly misleading Statements. Still, Plaintiffs sue Defendant for trying to collect a misrepresented debt in violation of the FDCPA and Florida Consumer Credit Protection Action ("FCCPA"). (Doc. 18). They argue they owe only the amount in the Consent Judgment, and the Statements' representations otherwise violate both statutes. For damages, Plaintiffs allege emotional injuries including "anger, anxiety, emotional distress, fear, frustration, humiliation, and embarrassment." (Doc. 18 at ¶¶ 28-29, 34, 40, 46). Defendant

moves to dismiss the Amended Complaint because the Statements were informational, not an attempt to collect Plaintiffs' debt, and required by another federal statute.

## DISCUSSION

Before deciding the merits of Defendant's motion to dismiss, the Court must first resolve whether Plaintiffs have standing to sue under Article III of the United States Constitution. *See Trichell*, 964 F.3d at 996.

**A. Standing**

Article III grants federal courts power to resolve only "Cases" or "Controversies." U.S. Const. art. III §§ 1-2. This case-or-controversy requirement embodies the doctrine of standing and "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating standing is "an essential and unchanging part of the case-or-controversy requirement of Article III").

Standing has three elements: (1) the plaintiff must have suffered an injury in fact; (2) the defendant must have caused the injury; and (3) a favorable decision must be likely to redress it. *See Trichell*, 964 F.3d at 996 (citation omitted); *cf. Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements."). "The foremost standing requirement is injury in fact." *Trichell*, 964 F.3d at 996 (quotations omitted). An injury in fact consists of "an invasion of a legally protected interest" that is both "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan, 504 U.S. at 560*. Pertinent here, a concrete injury "must actually exist"—it cannot be abstract. *Spokeo*, 236 S. Ct. at 1548. That holds true even if the alleged injury is intangible. *Trichell, 964 F.3d at 997* ("Intangibles injuries sometimes qualify as concrete, but not always."). Plaintiffs allege an intangible harm: emotional distress.

Because the Court raised standing sua sponte per *Trichell*, a brief discussion on the case is warranted. There, the Eleventh Circuit addressed whether two FDCPA plaintiffs had Article III standing. The plaintiffs received collection letters designed to entice them to pay time-barred debts. Although neither plaintiff paid anything, they asserted standing based on risk and informational injuries, which they considered a concrete injury. The Eleventh Circuit disagreed. It found the plaintiffs lacked standing for three reasons: (1) they did "not allege that the collection letters posed any risk of harm to themselves"; (2) "any risk that the letters may have posed to them had dissipated by the time they filed suit"; and (3) "an asserted informational injury that causes no adverse effects cannot satisfy Article III." *Trichell, 964 F.3d at 1000, 1004*.

After considering the parties' supplemental briefs, *Trichell* does not apply. Plaintiffs do not rely on risk or informational injuries to confer standing. Rather, they allege Defendant's collection efforts caused them emotional distress. Such intangible injuries can be concrete, especially when identified by Congress as a legally cognizable harm. *Spokeo,* 136 S. Ct. at 1549. And that's what Congress did

5

in the FDCPA. The statute allows individuals to recover "any actual damage sustained" because of a violation. 15 U.S.C. § 1692k(a)(1). And "[a]ctual damages under the FDCPA include damages for emotional distress." *Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916 (11th Cir. 2011). Plaintiffs' allegations of emotional harm thus give them Article III standing.

The Court thus turns to Defendant's motion to dismiss.

## B. Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure Rule 12(b)(6), a defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the complaint's factual content allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). When deciding a motion to dismiss, courts accept all factual allegations as true and view them favorably for the plaintiffs. *Ashcroft*, 556 U.S. at 679. Against this backdrop, the Court turns to Plaintiffs' claims.

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692.[4] To that end, debt collectors cannot use "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Nor can debt collectors employ "unfair or unconscionable means to collect or attempt to collect any debt." Id. § 1692f.

To state a plausible FDCPA claim, a plaintiff must allege "the challenged conduct is related to debt collection." Reese v. Ellis, Painter, Ratteree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012). When deciding whether a communication relates to collecting a debt, courts "look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [defendant] was attempting to collect a debt and was acting as a debt collector." Pinson v. Albertelli Law LLC, 618 F. App'x 551, 553 (11th Cir. 2015) (citations omitted).

Here, Defendant relies on another federal statute–TILA–to argue it did not engage in debt collection activity by sending the Statements. By way of background, TILA and its applicable regulations require residential mortgage service providers to give debtors periodic statements that group specific information like the amount due, explanation of amount due, past payment breakdown, transaction activity, and delinquency information. 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.41(d). And the Bureau of Consumer Financial Protection

---

[4] The FCCPA is Florida's counterpart to the FDCPA, and it "is construed in accordance with the [federal law]." Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 839 (11th Cir. 2010).

has created a model form to show the information permitted on such statements. (Doc. 20 at 7).[5]

According to Defendant, TILA required the Statements because Plaintiffs' debt had neither been discharged in bankruptcy nor dissolved by a foreclose sale. It also argues the Statements mimic the model form. Defendant thus concludes it cannot face FDCPA liability and cites several cases for support. *See Green v. Specialized Loan Serv. LLC*, 766 F. App'x 777, 784-85 (11th Cir. 2019); *Brown v. Select Portfolio Servicing, Inc.*, No. 16-cv-62999, 2017 WL 1157253 (S.D. Fla. Mar. 24, 2017); *Antonine v. Carrington Mortg. Servs., LLC*, No. 17-cv-61216, 2017 WL 3404389, at *2 (S.D. Fla. Aug. 8, 2017). Particularly illustrative is *Jones v. Select Portfolio Servicing, Inc.*, No. 18-cv-20389, 2018 WL 2316636, at *4 (S.D. Fla. May 2, 2018). In that case, the district court held that where "a mortgage servicer has sent mortgage statements substantially in compliance with the TILA, which do not materially deviate in substance from the Regulation Z model form and which factually apprise the borrower of his delinquency status, it should not be held liable under . . . the FDCPA for its apparent good faith compliance with the TILA."

Plaintiffs counter with three points. First, the Statements were unnecessary because the Consent Judgment absorbed their debt. Second, a TILA-generated loan statement can be both informational and an attempt to collect a debt. *See* Pinson, 618 F. App'x at 553 ("A communication can have more than one purpose, for example, providing information to a debtor as well as collecting a debt.").

---

[5] Defendant included a screenshot of the model form in its motion.

Third, the Statements' detachable payment coupon and disclaimer identifying Defendant as debt collector go beyond TILA's required information. *See Mackiewicz v. Nationstar Mortgage, LLC*, No. 6:15-cv-465-Orl-18GJK, 2015 WL 13814879, at *5 (M.D. Fla. June 25, 2015) (finding, without explanation, that TILA did not shield defendant from FDCPA liability for sending periodic billing statements).

Plaintiffs' arguments are unpersuasive. When Defendant sent the Statements, the bankruptcy proceedings had not concluded. Nor had a certificate of title been issued—meaning Plaintiffs debt was not discharged and Defendant remained obligated to comply with TILA. These facts preclude Plaintiffs' reliance on *Galle v. Nationstar Mortgage, LLC*, No. 2:16-cv-407-FtM-38CM, 2016 WL 4063274 (M.D. Fla. July 29, 2016) and *Roth v. Nationstar Mortgage, LLC*, No. 2:15-cv-783-FtM-29MRM, 2016 WL 3570991 (M.D. Fla. July 1, 2016). In both cases, the court rejected the defendants' TILA defense because the statute did not require the defendants to send loan statements for mortgage debts discharged in bankruptcy. *Roth*, 2016 WL 3570991, at *7 ("The Bureau of Consumer Financial Protection has clarified that a periodic statement is *not* required for mortgage debts discharged in bankruptcy proceedings." (footnote omitted) (emphasis in original)); *Galle*, 2016 WL 4063274, at *4 (same). Simply put, *Galle* and *Roth* are not analogous because Plaintiff's debt was not discharged.

9

Next, although a TILA-generated statement can have dual purposes,[6] the Statements here did not stray enough from the model form to trigger this concept. On this point, the Court finds *Brown* instructive. There, the district court considered a loan statement like the Statements here. It too (1) showed an amount due with a payment due date, (2) contained a payment coupon, and (3) notified the plaintiff what could happen if he did not pay. The court found the statement did not qualify as debt collection activity and was merely information the sender could transmit under TILA. This conclusion was based in part on guidance from the Bureau of Consumer Financial Protection, and the model form that included a detachable coupon. *Brown*, 2017 WL 115723 at *2-3. Other courts have reached the same conclusion. *See, e.g.*, Green, 766 F. App'x 777 at 784-85 (finding no debt collection activity where a loan statement contained an amount for an overdue payment with a payment due date, payment coupon, and told the recipient of what could happen if the recipient did not pay); Jones, 2018 WL 2316636.

Likewise, the Statements identifying Defendant as a "debt collector" and saying Defendant is not collecting a debt protected by the Bankruptcy Code are not harsh debt collection language that go beyond TILA and the model form. *See* Green, 766 F. App'x at 785 ("[T]he language [plaintiff] cites from his one Mortgage Statement lacks strong demands for payment used by debt collectors in [other] cases."); Kelliher v. Target Nat'l Bank, 826 F. Supp. 2d 1324, 1328 (M.D. Fla. 2011)

---

[6] Plaintiffs rely on *Pinson* for the general proposition that a communication can both inform a debtor and try to collect a debt. But *Pinson* is ultimately unhelpful because no TILA arguments were made there.

10

(denying a motion to dismiss where the monthly statements contained increasingly severe language, for example: "Account Seriously Past Due . . . but we may still be able to offer special payment arrangements[.]"). The Statements may have "minor discrepancies" from the model form, but none are so harsh to stray from TILA's "garden variety" language. *See Jones*, 2018 WL 2316636, at *4 (stating "minor discrepancies" from the model form do not convert an otherwise compliant monthly mortgage statement into a prohibited debt collection communication); Zavala v. Select Portfolio Servicing Inc., No. 18-CV-61651, 2018 WL 6198685, at *3 (S.D. Fla. Nov. 28, 2018) (granting motion to dismiss because, in part, "the language [the p]laintiffs identify within each section [we]re minor discrepancies with the same form that do not amount to an attempt to collect a debut [sic]."). At bottom, the Statements do not constitute debt collection activity because TILA required them. *See Williams v. Bank of Am., N.A.*, No. 6:17-cv-103-ORL-31TBS, 2017 WL 3662441, at *5 (M.D. Fla. Aug. 24, 2017).

One further point. The Amended Complaint alleges the Statements misrepresented Plaintiffs' debt to be more than the Consent Judgment. Even accepting this allegation as true, the Amended Complaint still does not plausibly allege Defendant's conduct related to debt collection—a necessary element. Because Plaintiffs cannot show Defendant engaged in debt collection activity, any further amendment to the FDCPA claims would be futile.

As for Plaintiffs' FCCPA claims, the Court declines supplemental jurisdiction. Whether Florida law would follow the principles above and bar Plaintiff's state claims is best left to the Florida courts.

Accordingly, it is now

**ORDERED:**

(1) Defendant Fay Servicing LLC's Motion to Dismiss for Failure to State a Claim (Doc. 20) is **GRANTED** as to the federal claims, and the Court denies supplemental jurisdiction over the state claims.

(2) The Amended Complaint is **DISMISSED with prejudice** as to the federal claims.

(3) The Clerk is **DIRECTED** to enter judgment, deny any pending motions as moot, terminate any deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on October 19, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record